## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| M.S. (minor) through Houeida Saad, next friend, individually and on behalf of all others similarly situated, | ) ) ) **Case No.:** |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FAIRFAX COUNTY SCHOOL BOARD, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

### CLASS ACTION COMPLAINT FOR FAIRFAX COUNTY PUBLIC SCHOOL'S DISCLOSURE OF THE IDENTIY OF ITS DISABLED STUDENTS AND THEIR MEDICAL RECORDS

Plaintiff M.S. a minor child through parent/legal guardian Houeida Saad, next friend ("Plaintiff"), individually and on behalf of all others similarly situated, through the undersigned counsel, hereby alleges the following against Defendant Fairfax County School Board ("Fairfax County Public Schools"), upon personal knowledge as to his/her own actions and his/her counsels' investigation, and upon information and belief as to all other matters, as follows:

1

## NATURE OF THE ACTION

1.     This is a class action for damages with respect to Defendant Fairfax County Public Schools, for its deliberate indifference and failure to exercise reasonable care in securing and safeguarding its disabled students' sensitive personal data—including student names, dates of birth, student identification numbers, the names of student family members, demographic information, family addresses, and medical history of impairments and/or other information that could be used to traceably identify an individual student. Examples of these materials include academic advising spreadsheets and/or student courseload information and/or diagnoses such as attention deficit hyperactivity disorder ("ADHD") (personally identifying information" or "PII") and medical and health insurance information, which is protected health information ("PHI") and which is required to be held confidential and not disclosed pursuant to the Individuals with Disabilities Education Act 20 U.S.C. § 1400 ("IDEA"), 34 C.F.R. §§ 300.610 through 300.626, and collectively with Private Information, ("Private Information") as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g et seq. ("FERPA") and Code of Virginia,   § 22.1-287.02, safeguarding "Students' personally identifiable information."

2

2. Plaintiff brings this claim alleging class-wide disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S. Code § 12101 ("ADA") which addresses disability discrimination by state and local governments and Section 504 of the Rehabilitation Act of 1974, 29 U.S.C. §§ 701–797b. ("Section 504"), which addresses disability discrimination by federal grantees.

3. The ADA and Section 504 provide individuals with disabilities with a range of protections, including in the areas of education, employment, transportation, public accommodations, and access to state and local government services.

4. Title II of the ADA applies to public services and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

5. Section 504 similarly prohibits discrimination against the disabled.

6. The effect of Fairfax County Public Schools' breaches has also resulted in a disparate impact upon disabled students and Plaintiff has standing to assert those rights here.  *See e.g. K.M. ex rel. Bright v. Tustin Unified Sch. Dist*., 725 F.3d 1088, 1098 (9th Cir. 2013) (holding that a private right of action exists to enforce disparate-impact discrimination under Title II of the ADA and Section 504).

3

7.     Upon information and belief, former and current Fairfax County Public Schools students who are disabled,  perceived to be disabled or who had a record of a disability are required to entrust Fairfax County Public Schools with sensitive, non-public Private Information, without which Fairfax County Public Schools could not perform its regular educational activities.

8.     Fairfax County Public Schools retains this Private Information for years and even after students have left its schools.

9.     By obtaining, collecting, using, and deriving a benefit from the Private Information of Plaintiff and Class Members, specifically, federal funding for specialized programs for its students, Fairfax County Public Schools assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion including to prevent the disclosure of those who in fact have submitted such Private Information.

10.     Fairfax County Public Schools' data security failures on or about October 19, 2023 (the "Data Breach"), allowed the dissemination of PII and PHI of its disabled students, and more significantly, disclosed the identity and Private Information of those students who submitted Private Information to  Fairfax County Public Schools because they were disabled students, had  record of disability or who are regarded as disabled.

4

11.     Fairfax County Public Schools sent notice letter to Plaintiff and other putative Class Members on or about December 7, 2023.  See Exhibit A.

12.     The notice letter indicated that Fairfax County Public Schools had failed to adequately protect Plaintiff's and Class Members' Private Information— and failed to even encrypt or redact this highly sensitive information. This unencrypted, unredacted Private Information was compromised due to Fairfax County Public Schools' reckless indifference, negligent and/or careless acts and omissions and their utter failure to protect its disabled students' data. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

13.     The Data Breach was a direct consequence of Fairfax County Public Schools' failure to used adequate and reasonable procedures and protocols necessary to protect individuals' Private Information with which it was entrusted.

14.     Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Fairfax County Public Schools' failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Fairfax County Public Schools' inadequate information security practices; and (iii) effectively secure Private Information using reasonable and effective security procedures free of vulnerabilities; and (vi)

incidents to redress Fairfax County Public Schools' disclosure *en masse* of the identifies of its disabled students and their Private Information.

15.     Fairfax County Public Schools disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, and negligently failing to implement and maintain adequate and reasonable measures to ensure that the Private Information of Plaintiff and Class members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the Private Information of Plaintiff and Class members was compromised through disclosures to a known third party.

16.     Plaintiff's and Class Members' identities are now at risk because of Fairfax County Public Schools' conduct since the Private Information that Fairfax County Public Schools collected and maintained has now been disseminated to the world, including potentially data thieves.

17.     Moreover, the publication of the identities of the students in the Data Breach consist predominately of disabled students from which Fairfax County Public Schools solicited and collected medical information.

18.     Significantly, this disclosure has permanently revealed to the public those students who are disabled, or who are perceived to be disabled by Fairfax County Public Schools or who had a record of a disability.

19.     Plaintiff and Class Members have suffered injuries as a result of Fairfax County Public Schools' conduct. These injuries include: (i) invasion of privacy; (ii) lost time, spent on activities remedying harms resulting from the Data Breach; (iii) an increase in spam calls, texts, and/or emails; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vi) diminution of value of their Private Information; (vii) the continued and increased risk of fraud and identity theft; (v) the reasonable apprehension that sensitive medical information about students will forever be disbursed and available to the public at large; (v) other general compensatory damages and (vi) attorneys' fee and costs.

20.     Plaintiff and Class Members seek to remedy these harms and prevent any future data compromise on behalf of themselves and all similarly situated persons whose personal data was compromised as a result of the Data Breach and who remain at risk due to Fairfax Public Schools's inadequate data security practices and specifically those practices which disparately impact its disabled students.

7

## PARTIES

21.     Plaintiff M.S., is and has been, at all relevant times, a resident of Virginia. Plaintiff is a student in Fairfax County Public Schools and is considered "disabled" within the expansive meaning of the ADA.

22.     Because of his/her disability, he/she was required to submit PII and PHI to Fairfax County Public Schools. M.S., like thousands of other students, provided his PII and PHI to Fairfax County Public Schools on the condition that it be maintained as confidential and with the understanding that Fairfax County Public Schools would employ reasonable safeguards to protect the information.

23.     If M.S. had known that Fairfax County Public Schools would not adequately protect his/her PII and PHI, he/she would not have entrusted Fairfax County Public Schools with his information or allowed Fairfax County Public Schools to maintain this sensitive information.

24.     Defendant Fairfax County School Board is the public school board that is responsible for overseeing operation and management of the public education system of the Fairfax County Public Schools ("FCPS"). The School Board is the body corporate for Fairfax County Public Schools and is vested with all powers and charged with all duties, obligations, and responsibilities imposed upon Fairfax County Public Schools.  The School Board is the public body that governs "[the] school division" within the meaning of Code of Virginia, § 22.1-1, Va. Const., Art.

8

VIII, § 7 ("The supervision of schools in each school division shall be vested in a School board"), Code of Virginia, § 22.1-28 ("supervision of schools in each school division shall be vested in a school board"), and Code of Virginia, § 22.1-71 (stating that the "school board" is the "body corporate" with the power to "sue" and "be sued"). As the corporate body for Fairfax County Public Schools, the School Board is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a) and a "person" within the meaning of the ADA and Section 504.

## JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction over this action under Title II, of the ADA and Section 504 which applies to State and local government entities, and, in Subtitle A, protects qualified individuals with disabilities from discrimination on the basis of disability in services, programs, and activities provided by State and local government entities.

26.    This Court has personal jurisdiction over Fairfax County Public Schools because its principal place of business is in this District and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

27.    Venue is proper under 18 U.S.C. § 1391 because Fairfax County Public Schools' principal place of business is in this District.

## FACTUAL ALLEGATIONS

9

***Fairfax County Public Schools***

28.    Fairfax County Public Schools is a branch of the Fairfax County government which administers public schools in Fairfax County and the City of Fairfax. With over 185,000 students enrolled, Fairfax County Public Schools is the largest public school system in Virginia and one of the largest in the country.

29.    Plaintiff and Class Members are current and former Fairfax students who are disabled, or who perceived to be disabled or who have a record of disability within the expansive meaning of the meaning of the ADA and Section 504. *See e.g.* 35 C.F.R. § 35.101("The primary purpose of the ADA Amendments Act is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the ADA Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA.").

30.    In order to obtain educational services for disabled students, Plaintiff and Class Members were required to provide sensitive and confidential Private Information, including their names, home address, phone number, and email address; date of birth; social security number;  primary and secondary insurance policy holders' names; demographic information; information relating to the

individual's medical and medical history; insurance information and coverage; and other information.

31.    Students at Fairfax County Public Schools who require accommodations or seek services or previously sought services related to disabilities (mental or physical; real or perceived) submit medical records and other health information to Fairfax County Public Schools for that stated purpose.

32.    Fairfax County Public Schools also creates and stores educational and medical records and other protected health information for its students, records of treatments and diagnoses.

33.    There is no other purpose for submitting this Private Information information to Fairfax County Public Schools.

34.    For example, upon investigation and belief, proof of inoculations or physicals for participating in extracurricular sports programs are not contained documents disclosed in the Data Breach; only information related to students who are seeking accommodations, i.e. the disabled, is included in the disclosure.

35.    As a result, Fairfax County Public Schools creates and maintains a list of students who have sought accommodations for disabilities, real or perceived, historic or current.

36.     Upon investigation and belief, Plaintiff and his Private Information was contained in in these files maintain by Fairfax County Public Schools of its disabled students.

37.     The information held by Fairfax County Public Schools in its computer systems and files included the unencrypted Private Information of Plaintiff and Class Members.

38.     Fairfax County Public Schools' Privacy Policy makes clear that it understands that its students' Private Information is personal and must be protected by law.

39.     Indeed, Fairfax's Privacy Policy provides that Fairfax County Public Schools comply with the Family Educational Rights and Privacy Act of 1974, Sec. 438, Publ. L. 90-247, as amended, which sets forth requirements governing protection of the right to privacy of educational records, and affords parents and eligible students the right to inspect such records.

40.     Fairfax County Public Schools further agreed to and undertook legal duties to maintain the Private Information entrusted to it by Plaintiff and Class Members in a safe and confidential manner, pursuant to the IDEA as set forth under 34 C.F.R. §§ 300.610 through 300.626 regarding the confidentiality of disabled student's records, and in compliance with all applicable laws including for instance, the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, the Health Insurance

Portability and Accountability Act of 1996 ("HIPAA") 42 U.S.C. 242k(k); the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g *et seq.* ("FERPA"); the confidentiality requirements of Code of Virginia,  § 22.1-287.02, regarding safeguarding "Students' personally identifiable information," as well as the common law.

41.    Plaintiff and Class Members provided their PII and PHI to Fairfax County Public Schools with the reasonable expectation and mutual understanding that Fairfax County Public Schools would comply with its obligations to keep such information confidential and secure from unauthorized access.

42.    Yet, through its failure to properly secure the Private Information of Plaintiff and Class Members, Fairfax County Public Schools failed to meet its own promises of patient privacy, thereby impacting and discriminating againt predominately disabled students who entrusted their Private Information to Fairfax County Public Schools.

43.    Fairfax County Public Schools  derived a substantial benefit from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Fairfax County Public Schools could not perform the services it provides or obtain federal funding for providing those services.

44.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Fairfax County Public Schools assumed

legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

### The Data Breach

45.    According to Fairfax County Public Schools' notice, it learned of the Data Breach on or around October 19, 2023.

46.    Inexplicably, over six weeks then passed where no one affected by the breach was notified by Fairfax County Public Schools.

47.    Then, on or about December 7, 2023, Fairfax County Public Schools began sending the Notice Letter to Class Members, informing them that:

> This matter occurred on or about October 19, 2023. During an in-person review of information related to the reviewer's own child, information relating to other students was inadvertently and unknowingly made accessible to a parent who retained an electronic copy of that information. Thereafter, the parent redacted the information related to other students and published the redacted information. Since learning of its publication on November 1, 2023, FCPS has worked to contain and secure the deletion of the information involved in this matter.
>
> We have determined that the information involved may have included one or more of the following types of student educational related information: student names, dates of birth, student identification numbers, the names of student family members, demographic information, family addresses, and/or other information that could be used to traceably identify an individual student. Examples of these materials include academic advising spreadsheets and/or student courseload information.

48.     The Notice was sent using regular U.S. Mail to the parents and/or guardians of the affected students.

49.     Fairfax County Public Schools offered no other substantive steps to help victims like Plaintiff and Class Members protect themselves from this Data Breach, nor did Fairfax County Public Schools accurately and adequately describe the nature and scope of the Data Breach.

50.     On information and belief, Fairfax County Public Schools sent a similar generic letter to all other individuals affected by the Data Breach.

51.     On information and belief, the Notice of the Data Breach was sent to parents and guardians of "disabled" students, as that term is defined by the ADA and Section 504, informed only that the Private Information was affected and disclosed by the Data Breach.

52.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

53.     Sometime after December 7, 2023, Plaintiff's mother and next-friend learned that Fairfax County Public Schools  breached Plaintiff's privacy protections when it disclosed his/her full name and other information within a list of student

names who were disabled and in a trove of thousands of pages of documents regarding Fairfax County Public Schools students' Private Information.

54.    Nearly all Class Members herein are minors or recently obtained the age of minority.

55.    Nearly all Class Members herein are disabled, or have been regarded as such, by Fairfax County Public Schools.

56.    Upon information and belief, the documents also disclosed social security numbers of disabled students, as social security numbers are identifiers often used by the Fairfax County Public Schools for a disabled student's Individualized Education Program ("IEP") pursuant to the IDEA.

57.    In this instance, the sensitive data of Fairfax's disabled students had not been "hacked" by the improper or illegal conduct of a third party but rather soley because of  Fairfax County Public Schools' shoddy record keeping protections and indifference to the rights of its disabled students.  In this instance, Fairfax County Public Schools knowingly and recklessly disclosed the identity of all its disabled students and their Private Information.

58.    Specifically, Fairfax County Public Schools disclosed tens of thousands of sensitive, confidential student records to a parent of a student of Fairfax County Public Schools.

59.     According to those familiar with the documents disclosed, the documents disclosed identify current and former special education students by name and include letter grades, disability status and mental health data.

60.     In one particularly sensitive disclosure, a counselor identified over 60 students who have struggled with issues like depression, including those who have engaged in self-harm or been hospitalized.

61.     In another example, the disclosure included a letter from the district to the state provides copious details about the condition and care of a medically fragile fourth grader.

62.     And another document as part of this disclosure included a document containing "attorney work product" marked "privileged and confidential" references a pair of Title IX cases. It identifies two students as "Jane Doe" — a common practice with alleged victims of sexual assault or harassment — but then names the students in parentheses.  See *Id*.

63.     This breach was initially publicly reported by The 74, a nonprofit news organization,      not      Fairfax      County      Public      Schools.      See https://www.the74million.org/article/exclusive-virginias-fairfax-schools-expose-thousands-of-sensitive-student-records/

64.     The report by The 74 described that Defendant had disclosed tens of thousands of sensitive, confidential school records to a parent advocate, who has been an outspoken critic of its data privacy record. *Id.*

65.     The Private Information was physically handed over to Callie Oettinger who had went to her child's school on three consecutive days in October of 2023 month to examine her children's files.  In addition to boxes of paper files, the Fairfax County Public Schools provided her with thumb drives and computer discs of other students' information through the aid of persnnnel from its IT Department. According to reporting, Ms. Oettinger estimates this includes personal data on roughly 35,000 students.  *Id*.

66.     Upon investigation and belief, Fairfax County Public Schools disclosed documents identifying current and former special education students, documents identifying students who struggled with mental health issues and other medical issues while enrolled in one of the Defendant's schools.

67.     Upon investigation and belief, on October 16, 2023, Ms. Oettinger received an email from Molly Shannon, and employee of Fairfax County Public Schools who manages the district's public records office inviting Ms. Oettinger to review her child's records.  For three consecutive days,  from October 17 through October 19, 2023, Ms. Oettinger sat in a small room next to the main office of her local high school and reviewed and copied the files. A paralegal from the central

18

office supervised as she copied records to thumb drives and scanned paper documents on her phone. This paralegal offered assistance and even called in an IT expert to assist with the transfer of the files.

68.     Fairfax County Public Schools' data security obligations were particularly important given the substantial increase in cyberattacks generally in recent years and specifically because of Fairfax County Public Schools' recent failures and admitted improper disclosures of its students' Private Information.

69.     Defendant admitted to the breach in a public statement, stating that it is "deeply sorry that this happened," "[is] working to determine who has been impacted so that appropriate notifications can be made," and disclosing that an "external legal investigation" is being conducted. *Id*.

70.     Fairfax County Public Schools did not use reasonable security procedures and practices appropriate to the nature of the sensitive information it was maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed or not permitting third parties unrestricted access to tens of thousands of disabled student's records over the course of three days.

71.     Fairfax County Public Schools had obligations created by the IDEA, HIPAA, FEPA, FTCA, industry standards, common law and representations made to Plaintiff and Class members to keep their Private Information including the

identifies of disabled children, confidential and to protect it from unauthorized access and disclosure.

72.     Since this disclosure, this information, i.e. the identities of disabled students and the medical information regarding their disabilities have been share and re-shared.

73.     Based on reporting, the Private Information obtained in the Data Breach given to  Ms. Oettinger was provided to The Goldwater Institute, "a free-market public policy research and litigation organization dedicated to advancing the principles of limited government, economic freedom, and individual liberty, with a focus on education, free speech, healthcare, equal protection, property rights, occupational licensing, and constitutional limits." *See* https://www.goldwaterinstitute.org/about/.

74.     Fairfax County Public Schools knew Ms. Oettinger, the party to whom it disclosed this information, having litigated a prior improper disclosure it made to her before.

75.     In 2021, Fairfax County Public Schools sued Ms. Oettinger to claw back a previous unauthorized disclosure of student records to Ms. Oettinger.  See *Fairfax County School Board v. Oettinger et al.*, CL 2021-13491 (Fairfax County Circuit Court).

76.    As noted by Judge Richard Gardiner on November 16, 2021, Fairfax County Public Schools failed to demonstrate any reason why it handed private information over to Ms. Oettinger in the first place, or any basis for seeking it back.

77.    On November 16, 2021, Judge Gardiner characterized Fairfax County Public Schools' conduct with respect to handling and transferring Private Information as "ineptness."

## PLAINTIFF'S EXPERIENCE

78.    Plaintiff has been a student at Fairfax County Public Schools during all times relevant to this action.

79.    Plaintiff has had a diagnosis of attention deficit hyperactivity disorder (ADHD), a diagnosis covered by ADA, since 2017 when he/she was entering 4th grade in Fairfax, County. Plaintiff had to submit the Attention and Learning Disorders Evaluation Service – Evaluation Results which was labeled "Confidential" to the school which in turn sent it to Fairfax County Public Schools. The evaluation is used for diagnostic clarification and treatment planning.  It contains a detailed history of his background information; Evaluation Measures and psychological testing; behavioral observations and clinical interviews; and the results which include Direct Measures of Functioning capability; rating scales; Attention Disorder/Executive Functioning Rating Scales and Impact of Symptoms on Functioning; it has the summary and conclusions; the DSM/ICD diagnostic

classification and detailed recommendations. It also contains very specific scores regarding his cognitive abilities, academic skills, attention factors amongst detailed other scores related to behaviors.

80.     Plaintiff was made eligible for a "504 Plan" which requires the school to provide educational accommodations for him.  The term "504 Plan" comes from Section 504 of the Rehabilitation Act. This law prohibits discrimination against people with disabilities in programs or activities that receive federal funding (such as public schools or publicly funded private schools).  Section 504 protects the rights not only of individuals with visible disabilities but also those with disabilities that may not be apparent.

81.     As a result of the pandemic, Plaintiff was struggling in 9th grade as he/she entered High School. Plaintiff's parents reached out to the High School to have him/her evaluated an IEP. As part of the IEP eligibility, Fairfax County Public Schools had him/her extensively tested by a Licensed School Psychologist and a Licensed Clinical Social Worker and created detailed individualized reports as extensive as the original pyscho/social report for the 504 Plan.  They recommended the IEP and this occurred around March 2023 towards the end of 9th grade.

82.     In order to obtain these educational services from Fairfax County Public Schools for which he/she was entitled, Plaintiff was required to provide

his/her Private Information to Fairfax County Public Schools, information which has now been disseminated to the world.

83.     Plaintiff is very careful about sharing his/her sensitive Private Information. Plaintiff stores any documents containing their Private Information in a safe and secure location.

84.     Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source or to any political advocacy organizations or news reporters.

85.     On the same day Plaintiff became aware of the Data Breach, Plaintiff immediately took steps to protect and vindicate his/her rights, including by initiating this litigation. Due to the recency of this breach, Plaintiff will be expending appreciable time and energy remaining alert of fraud or identity theft attempts.

86.     As a result of the Data Breach, and as a result of Fairfax County Public Schools' Notice Letter, Plaintiff has made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to: researching and verifying the legitimacy of the Data Breach as well as checking for any indication of fraudulent activity, which may take years to detect.

87.     Plaintiff suffered actual injury from having his Personal Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) lost time spent on activities

remedying harms resulting from the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) diminution of value of his Private Information; (vi) the continued and increased risk of fraud and identity theft; (vii) other compensatory damages; and (viii) attorneys' fees and costs.

88.    The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress.

89.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

90.    As a result of the Data Breach, Plaintiff is at present risk and will continue to be at increased risk of identity theft and fraud for years to come.

91.    Plaintiff has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains in Fairfax County Public Schools' possession, is protected and safeguarded from future breaches.

92.    Fairfax County Public Schools acquires, collects, and stores a massive amount of its students' Private Information including health information and other personally identifiable data.

93.    As a condition of engaging in health-related services, Fairfax County Public Schools requires that these students entrust them with highly confidential Private Information.

94.    By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and class members' Private Information, Fairfax County Public Schools assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

95.    Fairfax County Public Schools  has specific obligations and duties created by 34 C.F.R. §§ 300.610 through 300.626, HIPAA, FERPA, the FTCA, Code of Virginia § 22.1-287.02, industry standards, common law, and representations made to Class Members, to keep class members' Private Information confidential and to protect it from unauthorized access and disclosure.

96.    Fairfax County Public Schools failed to properly safeguard Plaintiff's and Class Members' Private Information, allowing third parties to access their Private Information.

97.    Plaintiff and Class Members provided their Private Information to Fairfax County Public Schools with the reasonable expectation and mutual understanding that Fairfax County Public Schools and any of its affiliates, agents and employees would comply with their obligation to keep such information confidential and secure from unauthorized access.

98.    Before, during, and after the Data Breach, Fairfax County Public Schools promised students that their Private Information would be kept confidential.

25

99.    Fairfax County Public Schools' failure to provide adequate security measures to safeguard students' Private Information is especially egregious because the disclosure in this instance contained a list of students who had received services attendant to their disability.   More plainly put, the Data Breach comprises predominately of students whom Fairfax County Public Schools regarded as disabled and those were the students disclosed on the list provided in the Data Breach.

100.   The ramifications of Fairfax County Public Schools' failure to keep its students' Private Information secure are long lasting and severe. Once Private Information is compromised, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for six to 12 months or even longer.

101.   Approximately 21% of identity theft victims do not realize their identify has been compromised until more than two years after it has happened.[22] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft

---

[22] *See Medical ID Theft Checklist*, IDENTITYFORCE https://www.identityforce.com/blog/medical-id-theft-checklist-2.

only when they received collection letters from creditors for expenses that were incurred in their names.[23]

102. Breaches are particularly serious in healthcare industries. The healthcare sector reported the second largest number of breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[24] Indeed, when compromised, healthcare related data is among the most private and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[25] Almost 50% of the surveyed victims lost their healthcare coverage as a result of the incident, while nearly 30% said their insurance premiums went up after the event. Forty percent of the victims were never able to resolve their identity theft at all. Seventy-four percent said that the effort to resolve the crime and restore their identity was significant or very significant. Data breaches

---

[23] *The Potential Damages and Consequences of Medical Identify Theft and Healthcare Data Breaches*, EXPERIAN, (Apr. 2010), https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf

[24] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report*, (2019) https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_V2_combinedWEB.pdf

[25] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for- victims/

and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[26]

103.  At all relevant times, Fairfax County Public Schools was well-aware, or reasonably should have been aware, that the Private Information it maintains is highly sensitive and could be used for wrongful purposes by third parties, such as identity theft and fraud.  Fairfax County Public Schools should have particularly been aware of these risks given the significant number of data breaches affecting the medical industry and related industries and its own recent history involving the improper disclosures of their students' Private Information.

104.  Had Fairfax County Public Schools remedied the deficiencies, followed industry guidelines, and adopted security measures recommended by experts in the field, Fairfax County Public Schools would have prevented the Data Breach.

105.  The compromised Private Information in the Data Breach is of great value to hackers and thieves and can be used in a variety of ways. Information about, or related to, an individual for which there is a possibility of logical association with other information is of great value to hackers and thieves. Indeed, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer

---

[26] *Id.*

or device even if the individual pieces of data do not constitute PII."[27] For example, different PII elements from various sources may be able to be linked in order to identify an individual, or access additional information about or relating to the individual.[28]

106.   The Private Information obtained through the Data Breach can reasonably be used to obtain additional information from Plaintiff and Class Members and has already been misused.

107.   In addition, as technology advances, computer programs may scan the Internet with wider scope to create a mosaic of information that may be used to link information to an individual in ways that were not previously possible. This is known as the "mosaic effect."

## A.   Fairfax's Conduct violated the IDEA, HIPAA, FERPA, the FTCA and State Laws

108.   HIPAA requires covered entities like Fairfax to protect against reasonably anticipated threats to the security of PHI. Covered entities must

---

[27] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers, Preliminary FTC Staff Report*, FED. TRADE COMM'N 35-38 (Dec. 2010), https://www.ftc.gov/reports/preliminary-ftc-staff-report-protecting-consumer-privacy-era-rapid-change-proposed-framework.

[28] *See id.* (evaluating privacy framework for entities collecting or using consumer data with can be "reasonably linked to a specific consumer, computer, or other device").

implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.[29]

109.   Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling Private Information like the data Fairfax County Public Schools left unguarded. HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

110.   The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also required Fairfax County Public Schools to provide notice of the breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[30]

111.   Similarly, under state law, Fairfax County Public Schools is required to alert parents "as soon as practicable" if there's a violation under FERPA. *See* Code of Viginia § § 22.1-287.02(B).

---

[29] *What is Considered Protected Health Information Under HIPAA?*, HIPAA JOURNAL, https://www.hipaajournal.com/what-is-considered-protected-health-information-under-hipaa/.
[30] *Breach Notification Rule*, U.S. DEP'T HEALTH & HUMAN SERVS., https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html.

112.   Likewise, a similar notice requirement applies to disabled students pursuant to the IDEA, 34 C.F.R. § 300.612 (b) "*[b]efore* any major identification, location, or evaluation activity." (emphasis added).

113.   Fairfax County Public Schools' Data Breach resulted from a combination of insufficiencies that demonstrate Fairfax County Public Schools failed to comply with safeguards mandated by the IDEA, HIPAA, FERPA and the FTCA regulations and state law.

114.   Chiefly, Fairfax County Public Schools' violations include,

- permitting and participating in the review, copying and disclosure of disabled students' records to a third party without prior notification to disabled students' parents and/or legal guardians in violation of 34 C.F.R. § 300.615;

- permitting and participating in the review, copying and disclosure of personally identifiable information of disabled students without parental consent in violation of 34 C.F.R. § 300.622(a);

- failing to implement reasonable safeguards of disabled students' Private Information in violation of 34 C.F.R. § 300.623(a);

- failing to provide adequate training, instruction and supervision of employees of Fairfax County Public Schools charged with collecting or using personally identifiable information of disabled students in violation of 34 C.F.R. § 300.624;

- unnecessarily retaining disabled student's records upon attainment of majority and/or cessation of the need for an accommodation and/or failing to destroy the same in violation of 34 C.F.R. § 300.624.

115. Fairfax County Public Schools' other failures include, but are not limited to, the following:

- failing to ensure the confidentiality and integrity of electronic protected health information that Fairfax County Public Schools creates, receives, maintains, and transmits in violation of 45 C.F.R. §164.306(a)(1);

- failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. §164.312(a)(1);

- failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. §164.308(a)(1);

- failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. §164.308(a)(6)(ii);

- failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 C.F.R. §164.306(a)(2);

- failing to protect against any reasonably anticipated uses or disclosures of electronically protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. §164.306(a)(3);

- failing to ensure compliance with HIPAA security standard rules by their workforce in violation of 45 C.F.R. §164.306(a)(94);

- impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 C.F.R. §164.502, *et seq.*;

- failing to effectively train all members of their workforce (including independent contractors) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of their workforce to carry out their functions and to maintain security of protected health information in violation of 45 C.F.R. §164.530(b) and 45 C.F.R. §164.308(a)(5); and

- failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 C.F.R. §164.530.

116. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all organizational decision-making.[31]

117. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses.[32] The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that

---

[31] *Start With Security: A Guide for Business*, Fed. Trade. Comm'n (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf [hereinafter *Start with Security*].

[32] *Protecting Personal Information: A Guide for Business*, Fed. Trade. Comm'm (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.

118.   The FTC further recommends that custodians of Private Information not maintain Private Information longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[33]

119.   The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

120.   Fairfax County Public Schools was at all times fully aware of its obligations to protect the Private Information of disabled students because of its position as a trusted healthcare provider.

---

[33] *Start with Security*, *supra* note 31.

121.   Fairfax County Public Schools was also aware of the significant repercussions that would result from its failure to do so, having previously disclosed, improperly, Private Information to Ms. Oettinger through its own ineptness.

122.   According to reporting on these prior disclosures, on at least six occasions between 2016 and 2021, Ms. Oettinger who filed requests to review her child's records received documents on children who are not her own. *See* https://www.the74million.org/article/exclusive-virginias-fairfax-schools-expose-thousands-of-sensitive-student-records/.

123.   Further, in 2021, a Fairfax parent, Debra Tisler, filed a public records request seeking invoices for legal services in an attempt to learn how much Fairfax County Public Schools was spending on attorneys' fees related to students with disabilities. Fairfax County Public Schools released records that included personal information on about a dozen students. See *Id.*

## B.   Fairfax County Public Schools Failed to Comply with Industry Standards

124.   HHS's Office for Civil Rights has stated:

> While all organizations need to implement policies, procedures, and technical solutions to make it harder for hackers to gain access to their systems and data, this is especially important in the healthcare industry.

> Hackers are actively targeting healthcare organizations, as
> they store large quantities of highly Private and valuable
> data.[34]

125.   HHS highlights several basic cybersecurity safeguards that can be implemented to improve cyber resilience that require a relatively small financial investment, yet can have a major impact on an organization's cybersecurity posture including: (a) properly encrypting Private Information; (b) educating and training healthcare employees on how to protect Private Information; and (c) correcting the configuration of software and network devices.

126.   Private cybersecurity firms have also identified the healthcare sector as being particularly vulnerable to cyber-attacks, both because the of value of the Private Information which they maintain and because as an industry they have been slow to adapt and respond to cybersecurity threats.[35] They too have promulgated similar best practices for bolstering cybersecurity and protecting against the unauthorized disclosure of Private Information.

127.   Despite the abundance and availability of information regarding cybersecurity best practices for the healthcare industry and Fairfax County Public Schools own prior failings with respect to the dissemination of PHI and PII, Fairfax

---

[34] *Cybersecurity Best Practices for Healthcare Organizations*, HIPAA JOURNAL (Nov. 1, 2018), https://www.hipaajournal.com/important-cybersecurity-best-practices-for-healthcare-organizations/.

[35]*See, e.g., 10 Best Practices For Healthcare Security*, INFOSEC, https://resources.infosecinstitute.com/topics/healthcare-information-security/#gref.

County Public Schools chose to ignore them. These best practices were known, or should have been known by Fairfax County Public Schools, whose failure to heed and properly implement them directly led to the Data Breach and the unlawful exposure of Private Information.

## C.   Damages to Plaintiff and the Class

128.   Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

129.   The ramifications of Fairfax County Public Schools' failure to keep students' private information secure are long lasting and severe.   Once private information is compromised, fraudulent use of that information and damage to the victims may continue for years.   Victims of data breaches are more likely to become victims of identity fraud.[36]

130.   In addition to their obligations under state laws and regulations, Fairfax County Public Schools' duty to Plaintiff and Class Members to protect private information entrusted to it, including to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the private information in its possession from being compromised, lost, accessed, and misused by unauthorized parties.

---

[36]  *2014 LexisNexis True Cost of Fraud Study*, LEXISNEXIS (Aug. 2014), https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf.

131.   Fairfax County Public Schools further owed and breached its duty to Plaintiff and Class Members to notify past and present students affected by the Data Breach in a timely manner.

132.   As a direct result of Fairfax County Public Schools' intentional, willful, reckless, grossly negligent and negligent conduct which resulted in the Data Breach, unauthorized parties were able to access, acquire, view, publicize, and/or otherwise cause the identity theft and misuse of Plaintiff's and Class Members' private information as detailed above, and Plaintiff is now at a heightened and increased risk of identity theft and fraud.

133.   This risk of harm applies predominately to those who submitted Private Information, i.e. Fairfax County Public Schools' disabled students.

134.   The risks associated with identity theft are serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing, or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit.

135.   Plaintiff and Class Members have suffered or face a substantial risk of suffering out-of-pocket fraud losses such as fraudulent charges on online accounts,

38

credit card fraud, loans opened in their names, medical services billed in their name, and similar identity theft.

136. Plaintiff and Class Members have, may have, and/or will have incurred out of pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

137. Plaintiff and Class Members will continue to spend significant amounts of time to monitor for misuse.

138. Because of Fairfax County Public Schools' disclosure, identity thieves can use the victim's private information to commit any number of frauds, such as obtaining a job, procuring housing, or even giving false information to police during an arrest. In the healthcare industry context, Private Information can be used to submit false insurance claims.

139. More significantly, by disclosing the record of its disabled students, the disclosure has the effect of branding these student as disabled, a criteria which students may not otherwise wish to reveal to the public at large in the future and upon obtaining majority. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 292 (1987) (although an individual may have an impairment that does not in fact substantially limit a major life activity, the reaction of others may prove just as disabling).

140.   As a result, Plaintiff and Class Members now face a real and continuing immediate risk of identity theft and other problems associated with the disclosure of their Private Information, and will need to monitor their credit for an indefinite duration. For Plaintiff and Class Members, this risk creates unending feelings of fear and annoyance. Private information is especially valuable to identity thieves. Fairfax County Public Schools knew or should have known this and strengthened its data systems accordingly.  Fairfax County Public Schools was put on notice of the substantial and foreseeable risk of harm from a data breach, yet it failed to properly prepare for that risk.  This may have future repercussions in terms of educational and job opportunities upon the Plaintiff and Class Members reaching adulthood.

141.   As a result of the Data Breach, Plaintiff and Class Members' Private Information has diminished in value.

142.   The Private Information belonging to Plaintiff and Class Members is private and was left inadequately protected by Fairfax County Public Schools who did not obtain Plaintiff's or Class Members' consent to disclose such Private Information to any other person as required by applicable law and industry standards.  Fairfax County Public Schools disclosed information about Plaintiff and Class Members that was of an extremely personal and sensitive nature as a direct result of its inadequate security measures.

40

143.   The Data Breach was a direct and proximate result of Fairfax County Public Schools failure to (a) properly safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (b) establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiff's and Class Members' Private Information; and (c) protect against reasonably foreseeable threats to the security or integrity of such information.

144.   Fairfax County Public Schools  had the resources necessary to prevent the Data Breach, but neglected to adequately implement data security measures, despite its obligation to protect customer data.

145.   Fairfax County Public Schools' annual budget is over three and one half *billion* dollars.   See   https://www.fcps.edu/sites/default/files/media/pdf/FY-2025-Advertised-Budget.pdf.pdf

146.   Fairfax County Public Schools did not properly train their employees to identify and avoid the breach and proceeded with ineptness with regard to safeguarding Private Information.

147.   Had Fairfax County Public Schools remedied the deficiencies in their data security systems and adopted security measures recommended by experts in the field, it would have prevented the breach.

41

148.   As a direct and proximate result of Fairfax County Public Schools' wrongful actions and inactions, Plaintiff and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and fraud, requiring them to take the time which they otherwise would have dedicated to other life demands such as work and family in an effort to mitigate the actual and potential impact of the Data Breach on their lives.

149.   The U.S. Department of Justice's Bureau of Justice Statistics found that "among victims who had personal information used for fraudulent purposes, twenty-nine percent spent a month or more resolving problems" and that "resolving the problems caused by identity theft [could] take more than a year for some victims."[37]

150.   Fairfax County Public Schools' failure to adequately protect Plaintiff and Class Members' Private Information has resulted in them having to undertake these tasks themselves, which require extensive amounts of time, calls, and, for many of the credit and fraud protection services, payment of money–while Fairfax County Public Schools sits by and does nothing to assist those affected by the incident. Instead, as Fairfax's Data Breach Notice indicates, it is putting the burden on Plaintiff and Class Members to discover possible fraudulent activity and identity theft.

---

[37] *See* U.S. Dep't of Justice, *Victims of Identity Theft,* OFFICE OF JUSTICE PROGRAMS: BUREAU OF JUSTICE STATISTICS 1 (Nov. 13, 2017), https://www.bjs.gov/content/pub/pdf/vit14.pdf [hereinafter *Victims of Identity Theft*].

151.   Plaintiff and Class Members have been damaged in several other ways as well.  Plaintiff and Class Members have been exposed to an impending, imminent, and ongoing increased risk of fraud, identity theft, and other misuse of their Private Information. Plaintiff and Class Members must now and indefinitely closely monitor their financial and other accounts to guard against fraud. This is a burdensome and time-consuming activity. Upon information and belief, Class Members have also purchased credit monitoring and other identity protection services, purchased credit reports, placed credit freezes and fraud alerts on their credit reports, and spent time investigating and disputing fraudulent or suspicious activity on their accounts. Plaintiff and Class Members also suffered a loss of the inherent value of their Private Information.

152.   The Private Information compromised in the Data Breach can be misused on its own, or it can be combined with personal information from other sources such as publicly available information, social media, etc. to create a package of information capable of being used to commit further identity theft. Compromised Private Information can also be used to send spear-phishing emails to class members to trick them into revealing sensitive information. Lulled by a false sense of trust and familiarity from a seemingly valid sender (for example Wells Fargo, Amazon, or a government entity), the target might agree to provide sensitive information requested in the email, such as login credentials, account numbers, and the like.

153.  As a result of Fairfax County Public Schools' failures to prevent the Data Breach, Plaintiff and Class Members have suffered, will suffer, and are at increased risk of suffering:

- The compromise, publication, theft and/or unauthorized use of their Private Information;

- Out-of-pocket costs associated with the prevention, detection, recovery and remediation from identity theft or fraud;

- Lost opportunity costs associated with efforts expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;

- The continued risk to their Private Information, which remains in the possession of Fairfax and is subject to further breaches so long as Fairfax fails to undertake appropriate measures to protect the Private Information in its possession;

- Current and future costs in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members;

- Anxiety and distress resulting; and

- Fear of misuse of their Private Information.

154.  In addition, to providing a remedy for the economic harm, Plaintiff and Class Members maintain an undeniable interest in ensuring that their Private Information remains secure and is not subject to further misappropriation and theft

and that their status as disabled students and medical histories be held in the strctiest

of confidence.

## **CLASS ACTION ALLEGATIONS**

155.   Plaintiff brings this action individually and on behalf of the following

class pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), 23(b)(3) and/or

23(c)(4).  Specifically, the class consists of the following:

> **Class:**
> All persons whose Private Information was compromised
> as a result of the Data Breach discovered on or about
> October 19, 2023, and who were sent notice of the Data
> Breach.

156.   Excluded from the Class are the following individuals and/or entities:

Fairfax County Public Schools and its subsidiaries, affiliates, officers and directors,

and any such entity or person in which Fairfax County Public Schools has a

controlling interest; all individuals who make a timely election to be excluded from

this proceeding using the correct protocol for opting out; and all judges assigned to

hear any aspect of this litigation, as well as their immediate family members.

157.   Plaintiff reserves the right to amend the definitions of the Class or add

a Class or Subclass if further information and discovery indicate that the definitions

of the Class should be narrowed, expanded, or otherwise modified.

158.   Certification of Plaintiff's claims for class-wide treatment are

appropriate because Plaintiff can prove the elements of his claims on a class-wide

basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

159. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**   The members of the class are so numerous that joinder of all class members would be impracticable.   On information and belief, the Class numbers in the thousands as detailed above.

160. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**   Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members of the class.   Such common questions of law or fact include, *inter alia*:

- Whether Fairfax County Public Schools' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

- Whether Fairfax County Public Schools' data security systems prior to and during the Data Breach were consistent with industry standards;

- Whether Fairfax County Public Schools' properly implemented its purported security measures to protect Plaintiff and the Class's Private Information from unauthorized dissemination, and misuse;

- Whether Fairfax County Public Schools' took reasonable measures to determine the extent of the Data Breach after it first learned of same;

- Whether Fairfax County Public Schools' disclosed Plaintiff's and the Class's Private Information in violation of the

understanding that the Private Information was being disclosed in confidence and should be maintained;

- Whether Fairfax County Public Schools willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the Class's Private Information;

- Whether Fairfax County Public Schools' was negligent and/or grossly negligent in failing to properly secure and protect Plaintiff's and the Class's Private Information;

- Whether Fairfax County Public Schools' was negligent and/or grossly negligent in failing to timely notify Plaintiff and the Class of the Data breach; and

- Whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

161. Fairfax County Public Schools engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and other members of the Class. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

162. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all Class Members were similarly injured through Fairfax County Public Schools' uniform misconduct described above and were thus all subject to

47

the Data Breach alleged herein. Further, there are no defenses available to Fairfax County Public Schools that are unique to Plaintiff.

163. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class he/she seeks to represent, he/she has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiff and his counsel.

164. **Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Fairfax County Public Schools has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23 (b)(2).

165. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against Fairfax County Public Schools, so it would be impracticable for members of the class to individually seek redress for Fairfax County Public Schools' wrongful

conduct.  Even if members of the Class could afford individual litigation, the court

system could not.  Individualized litigation creates a potential for inconsistent or

contradictory judgments and increases the delay and expense to all parties and the

court system.  By contrast, the class action device presents far fewer management

difficulties and provides the benefits of a single adjudication, economy of scale, and

comprehensive supervision by a single court.

## CAUSE OF ACTION

### Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act
**(On Behalf of Plaintiff and All Class Members)**

166.   Plaintiff repeats and realleges all paragraphs as though fully set forth

herein.

167.   This claim is brought by Plaintiff on behalf of himself and the Class

Members he/she seeks to represent.

168.   Unjustified isolation or segregation of qualified individuals with

disabilities through institutionalization is a form of disability-based discrimination

prohibited by Title II of the ADA.

169.   28 C.F.R. § 35.170 provides that any individual who believes that

he/she or a specific class of individuals has been subjected to discrimination on the

basis of disability by a public entity may, by himself or herself or by an authorized representative, file a complaint.

170.  28 C.F.R. § 35.178 restates the provision of section 502 of the ADA that a State actor is not immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court for violations of the ADA.

171.  28 C.F.R. § 35.160 requires Fairfax County Public Schools to take such steps as may be necessary to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others.

172.  28 C.F.R. § 35.130 (b)(8) prohibits policies and practices that unnecessarily impose requirements or burdens on individuals with disabilities that are not placed on others, or which have the tendency screen out an individual with a disability.

173.  The Data Breach violated the ADA disparately impacted the Plainitff and Class Members.

174.  Further, Damages including compensatory damages due to Fairfax County Public School's deliberate indifference with respect to the manner and circumstances surrounding the occurrence of the Data Breach. *See e.g. Koon v. North Carolina*, 50 F.4th 398, (4th Cir. 2022) (assuming a deliberate indifference standard

applies in a case presenting ADA and Rehabilitation Act claims for compensatory damages).

175.   By either design or effect, the Data Breach affected predominately disabled students who are covered by the ADA and Section 504.

176.   An "individual with a disability" means any person who has a disability or is regarded or perceived as having a disability or who had had a record of a disability.

177.   Fairfax County Public Schools Data Breah as alleged above had a disparate impact upon the disabled students of Fairfax County and caused the identities of these students and disabilities to be published along with their Private Information.

178.   Fairfax County Public Schools Data Breah as alleged above demonstrated a discriminatory intent of reckless indifference toward the disabled students of Fairfax County and caused the identities of these students and disabilities to be published along with their Private Information.

179.   Fairfax County Public Schools also breached their duty to Plaintiff and Class Members to adequately protect and safeguard Private Information, and to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse. This permitted disclosure of Class Members' Private Information and

potentially misuse the Private Information and intentionally disclose it to others without consent.

180. Fairfax County Public Schools knew, or should have known, of the risks inherent in collecting and storing Private Information and the importance of adequate security.

181. Fairfax County Public Schools knew or should have known about numerous well-publicized data breaches within the medical industry.

182. Fairfax County Public Schools knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiff's and Class Members' Private Information.

183. Fairfax County Public Schools breached their duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

184. Because Fairfax County Public Schools knew that a breach of their systems would damage thousands of their students, including Plaintiff and Class Members, Fairfax County Public Schools had a duty to adequately protect their data systems and the Private Information contained thereon.

185. Fairfax County Public Schools' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Fairfax

and its students, which is recognized by laws and regulations including but not limited to common law. Fairfax County Public Schools was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

186. Fairfax County Public Schools had a duty not to disclose the Plaintiff's and other Class Members' Private Information without prior authorization pursuant to the IDEA.

187. In addition, Fairfax County Public Schools had a duty to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

188. Fairfax County Public Schools also had a duty under HIPAA privacy laws, which were enacted with the objective of protecting the confidentiality of clients' healthcare information and set forth the conditions under which such information can be used, and to whom it can be disclosed. HIPAA privacy laws not only apply to healthcare providers and the organizations they work for, but to any entity that may have access to healthcare information about a patient that—if it were to fall into the wrong hands—could present a risk of harm to the patient's finances or reputation.

189.   Fairfax County Public Schools had further obligations under FERPA and Code of Virginia, § 22.1-287.02 which were violated.

190.   Fairfax County Public Schools' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Fairfax County Public Schools is bound by industry standards to protect confidential Private Information.

191.   Fairfax County Public Schools owed numerous duties to Plaintiff and the Class, including the following:

- to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting Private Information in their possession;

- to protect Private Information using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

- to implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

192.   Fairfax County Public Schools breached its duties and was negligent, by failing to use reasonable measures to protect class members' Private Information, and by failing to provide timely notice of the Data Breach.  The specific negligent acts and omissions committed by Fairfax County Public Schools include, but are not limited to, the following:

- failing to adopt, implement, and maintain adequate security measures to safeguard class members' Private Information;

- failing to adequately monitor the security of Fairfax County Public Schools' networks and systems;

- allowing unauthorized access to class members' Private Information; and

- failing to timely notify class members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

193. Through Fairfax County Public Schools' acts and omissions described in this Complaint, Fairfax County Public Schools breached its duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' Private Information during the time it was within Fairfax County Public Schools' possession or control.

194. As a result of the aforementioned breaches, Plaintiff and the Class Members have the right to have their claims addressed in Court under Title II of the ADA and seek attendant damages.

195. As a direct result of Fairfax County Public Schools' practices and breaches as described above, Plaintiff and the Class have suffered damages including, but not limited to, compensatory damages, attorney fees and costs.

196. 28 C.F.R. § 35.175 states that courts are authorized to award attorneys' fees, including litigation expenses and costs, as provided in section 505 of the Act.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Fairfax County Public Schools, as follows:

1. For an Order certifying this action as a class action and appointing Plaintiff and his/her counsel to represent the classes;

2. For equitable relief enjoining Fairfax County Public Schools from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from failing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

3. For declaratory relief concluding that that Fairfax County Public Schools owed, and continues to owe, a legal duty to employ reasonable data security to secure the Private Information with which it is entrusted, specifically including information pertaining to healthcare and financial records it obtains from its clients, and to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

4. For equitable relief compelling Fairfax County Public Schools to utilize appropriate methods and policies with respect to consumer

56

data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

5. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Fairfax County Public Schools wrongful conduct;

6. Ordering Fairfax County Public Schools to pay for not less than three (3) years of credit monitoring services for Plaintiff and the Class, after each class member reaches the age of majority;

7. For an award of actual damages, compensatory damages, statutory damages and statutory penalties, in an amount to be determined, as allowable by law;

8. For an award of punitive damages, as allowable by law;

9. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

10. Pre- and post-judgment interest on any amounts awarded; and

11. Such other and further relief as this court may deem just and proper.

> Respectfully Submitted,
> Plaintiff
> By Counsel

Dated: April 15, 2024.

  /s/
Matthew T. Sutter, Esq., VSB No. 66741
Sutter & Terpak, PLLC
7540 Little River Tnpk.
Suite A, First Floor
Annandale, VA 22003
Tel: (703) 256-1800
Fax: (703) 991-6116
Email: matt@sutterandterpak.com

Sam W. Burgan, Esq., VSB No. 42458
Burgan & Associates, P.C.
5673 Columbia Pike, Suite #201
Falls Church, VA 22041-2880
Tel: (703) 575-8810
Fax: (703) 575-8054
Email: sburgan@burganlaw.com

        and

Nicholas A. Migliaccio, Esq.*
Jason S. Rathod, Esq.*
Migliaccio & Rathod LLP
412 H Street N.E., Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
Fax: (202) 800-2730
Email: nmigliaccio@classlawdc.com and jrathod@classlawdc.com
* Pro hac vice admission to be sought
Counsel for Plaintiff