# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | |
|---|---|
| H.S. on behalf of M.S., a minor and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>Fairfax County Public Schools, )<br><br>Defendant. ) | **Case No.: 1:24-cv-00622-MSN-IDD**<br><br>**JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

H.S. on behalf of M.S., a minor child ("Plaintiff" or "H.S."), and on behalf of all others similarly situated, through his/her undersigned counsel, hereby allege the following against Defendant Fairfax County Public Schools ("FCPS"), upon personal knowledge as to her actions and her counsel's investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This is a class action for damages and injunctive relief with respect to Defendant FCPS, for FCPS' deliberate indifference in making another unlawful disclosure to an unauthorized party ("Disclosure")—including student names, dates of birth, student identification numbers, the names of student family members,

1

demographic information, family addresses, and medical history of impairments and/or other information that could be used to identify the students ("Private Information") — and which is required to be held confidential and not disclosed pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g et seq. ("FERPA").

2.     M.S. brings this claim alleging class-wide disability discrimination under the Americans with Disabilities Act of 1990, 42 U.S. Code § 12101 ("ADA") which addresses disability discrimination by state and local governments and Section 504 of the Rehabilitation Act of 1974, 29 U.S.C. §§ 701–797b. ("Section 504"), which addresses disability discrimination by recipients of federal funding.

3.     The ADA and Section 504 provide individuals with disabilities with a range of protections, including in the areas of education, employment, transportation, public accommodations, and access to state and local government services.

4.     Title II of the ADA applies to public schools and provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

5.    Section 504 similarly applies to public schools and prohibits discrimination against the disabled by recipients of federal funding.

6.    FCPS' Disclosure and its practices, rules and/or methods of administrating responses to requests for public records as alleged *infra.,* has resulted in disparate treatment of its students with disabilities, including M.S. and Class Members.

7.    FCPS' Disclosure resulted in a disparate impact upon its students who have/had disabilities, and M.S. has standing to assert those rights here. *See e.g. K.M. ex rel. Bright v. Tustin Unified Sch. Dist*., 725 F.3d 1088, 1098 (9th Cir. 2013) (holding that a private right of action exists to enforce disparate-impact discrimination under Title II of the ADA and Section 504).

8.    Upon information and belief, former and current FCPS students who are disabled, perceived to be disabled, who had a record of a disability or who sought an accommodation provided by the ADA and Section 504 are required to entrust FCPS with sensitive, non-public Private Information, without which FCPS could not perform its regular educational activities.

9.    The Disclosure was a direct consequence of FCPS' practice of disseminating Private Information about its students who have/had a disability, including those who receive/have received special education services to unauthorized third parties as evidenced by FCPS' prior unlawful disclosures.

3

10.    M.S. brings this action on behalf of all persons whose Private Information was compromised as a result of FCPS' failure to: (i) adequately protect the Private Information of M.S. and Class Members; (ii) properly train its employees on how to handle student records; (iii) FCPS' practice of impermissibly disclosing the above-referenced records; and (iv) FCPS' deliberate indifference to the impact such disclosures would have on this vulnerable population.

11.    Specifically, FCPS disregarded the rights of M.S. and Class Members by intentionally, willfully, recklessly, and negligently disclosing their Private Information to an unauthorized third party (who then shared the confidential data with another unauthorized party).

12.    M.S. and Class Members have personally and directly been subjected to discriminatory treatment and as individual with a disabilities and have a concrete interest in equal treatment under the ADA and Section 504 of the Rehabilitation Act.

13.    As a result of FCPS' unlawful Disclosure, M.S.' and Class Members' privacy rights were violated.

14.    Thus, M.S. and Class Members have suffered injuries as a result of FCPS' conduct, including: (i) invasion of privacy; and (ii) the reasonable apprehension that sensitive medical and educational information will forever be disbursed and available to the public at large, all of whom have no right to access the Private Information.

15.    In addition, M.S. and Class Member have suffered injuries in fact which are specifically redressable under the ADA and Section 504 of the Rehabilitation Act, including, (iii) personally suffering from intangible injuries resulting from discrimination; (iv) personally suffering from the stigmatizing effect of having his/her identity included in a list of persons whom Defendant regards as being disabled or having a record of disability; (v) personally suffering from the stigmatizing members of the disfavored and group regarded as innately marginalized; (iv) personally suffering serious non-economic injuries by being personally denied equal treatment solely because of their membership in a historically-viewed disfavored and/or marginalized group; (v) personally suffering humiliation, embarrassment, and frustration from the FCPS' Disclosure; (vi) personally suffering from effect that given the Defendant's past disclosures and subsequent disclosures of confidential medical information will chill or reasonably prevent and/or deter a disabled student from seeking accommodations in the form of special education services or other accommodations in the future; and (vii) personally suffering from a real or immediate threat that a subsequent disclosure will occur again with either a re-disclosure of the materials by either the Defendant or third party to whom the Defendant had no right to disclose and no ability to restrict.

16.    M.S. and the Class Members seek to remedy FCPS' discriminatory conduct on behalf of all similarly situated persons whose Private Information was

affected by the Disclosure and FCPS' practices, rules, and/or methods of administrating responses to public records requests.

## PARTIES

17.    M.S., at all relevant times, was a resident of Virginia. M.S. is also enrolled in FCPS and is considered a person with a disability, as defined by the ADA.

18.    Because of his/her disability, M.S. was required to provide FCPS with his/her Private Information.

19.    H.S. is M.S.' parent, and at all relevant times, H.S. resided with her child in Virginia.

20.    Proposed Class Members are current and former FCPS students who are disabled within the expansive meaning of the meaning of the ADA and Section 504 and include the disabled, those who are perceived to be disabled, those who have a record of disability and/or those who sought an accommodation as provided by the ADA and/or Section 504 . *See e.g.* 35 C.F.R. § 35.101("The primary purpose of the ADA Amendments Act is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the ADA Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA.").

21.     Defendant Fairfax County School Board is the public school board that is responsible for overseeing the operation and management of the public education system FCPS, with its administrative offices located at 8115 Gatehouse Road, Falls Church, VA 22042. The Fairfax County School Board is the body corporate for FCPS and is vested with all powers and charged with all duties, obligations, and responsibilities imposed upon FCPS. As the corporate body for FCPS, the Fairfax County School Board is a recipient of federal financial assistance within the meaning of 20 U.S.C. § 1681(a) and a "person" within the meaning of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

23.     This Court has personal jurisdiction over FCPS because its principal place of business is in this District and the acts and omissions giving rise to Plaintiff's claims occurred in and emanated therein.

24.     Venue is proper under 28 U.S. Code § 1391. FCPS, located in Fairfax County, Virginia, has engaged in unlawful discriminatory conduct by disclosing the Private Information of its students with disabilities, which is the result of FCPS' practice of inadequate record-keeping and distribution, methodology. Moreover,

M.S., and likely a great majority of the proposed Class Members, reside within this district. As such, "a substantial part of the events or omissions giving rise to this lawsuit" occurred within this jurisdiction.

## **FACTUAL ALLEGATIONS**

25.     In October 2023, after requesting access to her child's student records, Ms. Callie Oettinger ("Oettinger") was invited by FCPS to review and copy files in a conference room at an FCPS school for three days.

26.     In furtherance of this examination, Oettinger was provided access to boxes of paper files, thumb drives, and computer discs containing confidential student information which she never requested and  was not entitled to.

27.     Upon information and belief, an FCPS paralegal "supervised" Oettinger as she copied records to thumb drives and scanned paper documents on her cell phone for a period of three days.

28.     The paralegal not only "supervised" Oettinger, but she offered to assist in the reviewing/copying process, and even called in an IT expert to help with the transfer of the files.

29.     Upon information and belief, FCPS provided Oettinger with thumb drives and computer discs containing the Private Information of approximately 35,000 FCPS students over the course of three days.

30.     Upon information and belief, the Disclosure only pertained to current and former FCPS students who have or have had a disability including those who have received special education services or were regarded as being disabled by FCPS, or having a history or record of having a disability., (the "Class Members" or the "Class" ). All Class Members were minors or have just recently reached the age of majority.

31.     To obtain an Individualized Education Program ("IEP"), the mechanism by which FCPS' students receive special education services, Class Members must have or have had a disability that significantly impacted their ability to access a free and appropriate education.

32.     Thus, Class Members were required to provide sensitive and confidential Private Information, including their names, home addresses, phone numbers, and email addresses; dates of birth; Social Security Numbers; disability statuses, primary and secondary insurance policy holders' names; demographic information; information relating to medical history, and insurance information.

33.     The scope of the Disclosure is sweeping. For instance, information regarding over sixty (60) Class Members who suffer or have suffered from mental health conditions, including the identities of those who have engaged in self-harm or who have been hospitalized because of their conditions were included in the Disclosure.

34.    Moreover, part of the Disclosure included a letter from FCPS to the Commonwealth of Virginia that provided a plethora of details pertaining to the specific medical condition and care of a FCPS student with significant health concerns.

35.    After Oettinger realized she was given the Private Information of students other than her own, she subsequently handed over the sensitive data to her attorneys at the Goldwater Institute in Phoenix, Arizona.

36.    Upon information and belief, that data was then viewed by others within the Goldwater Institute and at the very least Oettinger's attorney(s) who are employed and/or engaged by the Goldwater Institute.

37.    Oettinger also disclosed and published this information on websites, in redacted form.

38.    On December 7, 2023, more than six (6) weeks after the Disclosure, FCPS finally sent notice to the affected students and/or their legal guardians informing them of the Disclosure.

39.    Shortly thereafter, H.S. learned that M.S.' Private Information was impermissibly shared in the Disclosure via the aforementioned notification and quickly confirmed that FCPS had been unable to secure the deletion of this information.

40.    In the notice, FCPS concedes that this information was delivered to Oettinger (without naming her), claims that this information had since been redacted by Oettinger (without naming her), and that Oettinger (without naming her) had published the redacted information, and that FCPS has worked to secure the deletion of the information. *See* Exhibit A.

41.    Missing from the notice is the fact that FCPS did not contain and secure the deletion of the information and that Oettinger and others continue to possess this information with no apparent restrictions on their ability to republish or share this information going forward. *See Id*.

42.    The notice is in fact misleading in other ways too. By phrasing the redaction efforts and remediation efforts as a gerund, and specifically ongoing, FCPS suggests that further adequate steps would be taken by FCPS to safeguard the republication and sharing of the confidential information and identities of FCPS' disabled students when, in fact, FCPS has not disclosed that it has undertaken any meaningful or effective efforts to secure the deletion of the information and has not in fact succeeded in securing the deletion of the information. *Id.*

43.    Upon information and belief, FCPS undertook no efforts and/or inadequate efforts to obtain a legally binding assurance from Oettinger that she had deleted the information and would not further disseminate the records or its contents online in an unredacted form.

44.    Further, the notice is misleading because the disclosure was not "inadvertent."  The notice claims that the disclosure of the confidential information to Oettinger was inadvertent.  But the notice does not explain what in fact happened and how the circumstances of the disclosure was the result of FCPS' own conduct.

45.    The Disclosure was not inadvertent because it was an official act of FCPS, undertaken through its attorneys to deliver and make available the records to Oettinger.

46.    The Private Information was not mislaid, misplaced, lost, or hacked by a third-party.  Rather it was gathered and organized and then copied by FCPS through it's attorneys' office, acting in their official capacities, thereby constituting a purposeful act and reflecting FCPS' *de facto* polices, rules and/or methods of administrating responses to requests for student information by parents and education advocates.

47.    These types of disclosures have been commonplace. Particularly, FCPS repeated these types of disclosures before October 2023, and upon information and belief, since October 2023.  *See* https://www.the74million.org/article/exclusive-virginias-fairfax-schools-expose-thousands-of-sensitive-student-records/

48.    In fact, FCPS had previously shared Private Information related to Oettinger's child with other FCPS parents.

49.    In response to that unlawful dissemination, FCPS apologized to Oettinger, declaring that the responsible employee would receive "FERPA (Family Educational Rights and Privacy Act) training."

50.    As illustrated by the subsequent disclosures, the aforesaid training was woefully inadequate or never happened at all.

51.    Notably, FCPS' failures are not limited to Oettinger since it has made similar impermissible disclosures to other FCPS' parents.

52.    For example, in 2020, FCPS responded to a public records request from Ms. Debra Tisler ("Tisler") who requested  records regarding the special education department's legal fees.   In this disclosure to Tisler, FCPS also provided confidential documents related to approximately twelve (12) students.

53.    Tisler subsequently provided the above-referenced Private Information to Oettinger, who placed the records on her website pertaining to FCPS' ongoing misconduct with respect to disseminating students' confidential information.

54.    Now Oettinger possesses at least two data sets of information FCPS contends she was never entitled to see.

55.    After Oettinger published this information about the disclosure on websites, FCPS sued Oettinger, seeking to retrieve the student records. *See Fairfax County School Board v. Oettinger et al.,* CL 2021-13491 (Fairfax County Circuit Court).

56.    At the first preliminary hearing in the above-referenced matter, the Circuit Court found that the documents were lawfully obtained and indicated that FCPS alone was at fault for giving the records to Oettinger.

57.    FCPS subsequently dropped the lawsuit, presumably because it concluded it could not claw back the disclosure because the dissemination  was intentionally and purposefully made by FCPS.

58.    Notably, Judge Richard Gardiner characterized FCPS's conduct with respect to handling and transferring Private Information as "ineptness."

59.    This ineptness reached the level of deliberate indifference when FCPS disclosed, with the aid of its own attorneys and staff,  the Private Information of 35,000 students to Oettinger in October 2023.

60.    Oettinger is a known special education advocate, with a so-called "agenda" against FCPS and its alleged problematic practices.  This should have put FCPS on notice that extreme diligence (above and beyond the routine) is required when interacting with Oettinger and her requests.

61.    Instead, FCPS acted in the opposite manner, and with extreme deliberate indifference, by failing to practice the requisite care when transferring the Private Information of its students.

62.    FCPS'  repeated failure to secure Private Information is evidenced by its prior experiences with Oettinger, many of which she has publicly recounted.

63.    M.S. and the Class Members have been harmed by FCPS' deliberate indifference to their privacy rights and will continue to suffer such harm. It is furthermore likely that this harm will reoccur, as the sensitive information contained in their records regarding their disability status, including their receipt of special education services, are now accessible to an unknown number of unauthorized parties and will likely be disclosed again by FCPS.

64.    M.S. and the Class possess a well-established right to privacy and other rights pertaining to this highly sensitive Private Information.

65.    Upon information and belief, the Class' Private Information remains in the hands of unauthorized parties, thereby at perpetual risk for further unlawful dissemination.

66.    FCPS had obligations created by HIPAA, FERPA, and the common law to safeguard M.S.' and the Class Members' Private Information from unauthorized access and disclosure.

67.    FCPS was derelict in this duty, to the detriment of M.S. and the Class.

## CLASS ACTION ALLEGATIONS

68.    Plaintiff brings this action upon his/herself and members of the following proposed Class pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), 23(b)(3) and/or 23(c)(4). Specifically, the Class is defined as follows:

**Class Members**
All persons whose Private Information was compromised as a result of the FCPS Disclosure that occurred in October 2023 as evidenced by receipt of the FCPS December 7, 2023 notification letter.

Excluded from the Class are the following individuals and/or entities: FCPS and its subsidiaries, affiliates, officers and directors, and any such entity or person in which FCPS has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their judicial staff and immediate family members.

69. Plaintiff reserves the right to amend the definitions of the Class or add a subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

70. Certification of these claims for class-wide treatment is appropriate because M.S. can prove the elements of his/her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

71. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that a joinder of all members would be impracticable. Upon information and belief, the Class numbers in the thousands as detailed above.

16

72.  **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class Members. Such common questions of law or fact include, *inter alia*:

a.  Whether FCPS' has a practice of unlawfully disclosing confidential student records;

b.  Whether FCPS was deliberately indifferent to it practice of unlawfully disclosing confidential student records;

c.  Whether FCPS' practice of unlawfully disclosing confidential student records had a disparate impact on its students with disabilities, including those students who have received special education services;

d.  Whether FCPS' failure to properly train its personnel as related to responding to student records and public records requests led to the Disclosure that consequently had a disparate impact on the Class;

e.  Whether FCPS willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to M.S.' and the Class's Private Information; and

f.  Whether M.S. and the other members of the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief.

73.  FCPS engaged in a common course of conduct giving rise to the legal rights sought to be enforced by M.S. and other members of the Class. Similar or identical statutory and common law violations, business practices, and injuries are

involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.

74.    **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  M.S.' claims are typical of the claims of the other members of the Class because, among other things, all Class Members were similarly injured through FCPS' uniform misconduct described herein. Further, there are no defenses available to FCPS that are unique to M.S.

75.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).**  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class she seeks to represent, she has retained counsel competent and experienced in complex class action litigation, and Plaintiff will prosecute this action vigorously. The Class' interests will be fairly and adequately protected by M.S. and his/her counsel.

76.    **Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**  FCPS has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23 (b)(2).

77.    **Superiority—Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the

management of this class action. The damages or other financial detriment suffered by M.S. and the members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims against FCPS, so it would be impracticable for members of the Class to individually seek redress for FCPS' wrongful conduct. Even if members of the Class could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

**CAUSES OF ACTION**

**COUNT ONE**
**<u>Violation of Title II of the Americans with Disabilities Act of 1990:</u>**
**<u>Disparate Treatment</u>**
**<u>(On Behalf of M.S. and the Class Members)</u>**

78.    Plaintiff  repeats and realleges all the foregoing paragraphs as though fully set forth herein.

79.    Pursuant to 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

19

80.    Prohibited forms of disability discrimination under the ADA also include, denying individuals with disabilities the opportunity to participate in a program or service, providing an unequal opportunity to participate in the program or service, and providing the entity's program or service in a way that is not effective in affording the individual with the disability an equal opportunity to obtain the same result as provided to others.  *See e.g.* 28 C.F.R. §35.130(b)(1).

81.    Unjustified isolation or segregation of qualified individuals with disabilities is a form of disability-based discrimination prohibited by Title II of the ADA.

82.    The purpose of the ADA is to ensure equal access and opportunities to benefit from programs, services and activities.

83.    M.S. and Class Members are qualified individuals with a disability and were treated unequally.

84.    M.S. and Class Members were otherwise discriminated against by FCPS in FCPS' provision of educational services, programs and activities.

85.    M.S. and Class Members were excluded and denied FCPS' provision of educational services, programs and activities and were discriminated against by reason of their disabilities and disabled status.

86.    A person is considered to have a disability if they have a physical or mental impairment that substantially limits one or more major life activities, have a

history or record of such an impairment, or are perceived by others as having such an impairment.

87.    FCPS, as an arm of the state of Virginia, is considered a state entity and therefore is under the purview of the ADA.

88.    To obtain special education services, students must possess a disability that adversely affects their ability to access an education, have a history of an impairment that renders them disabled under the ADA, or is regarded as disabled.

89.    Thus, every student who receives special education services is considered a person with a disability pursuant to the ADA. As such, the Class Members are considered persons with disabilities.

90.    FCPS' Disclosure only distributed the Private Information of its students who have or have had disabilities, a record of disabilities or whom FCPS perceives to be disabled.

91.    On several other occasions, FCPS has disseminated the Private Information of its students with disabilities to unauthorized parties.

92.    FCPS was aware that it had previously disclosed the Private Information of this population and has issued apologies for the reckless and negligent conduct, as well as assurances that it would address the issues that plagued it.

93.     Moreover, FCPS was put on explicit notice pursuant to a Fairfax County Circuit Court ruling that its record-keeping (including the transferring of Private Information) practices were "inept."

94.     Nevertheless, FCPS still provided Oettinger with tens of thousands of records relating to students with disabilities to which she had no right and documents which, in fact, upon information and belief, she did not even request.

95.     FCPS' most recent Disclosure when viewed in light of past and subsequent disclosures amounts to deliberate indifference with respect to M.S. and other Class Members.

96.     As a result of FCPS' practice resulting in the Disclosure, the confidential and sensitive information (including health information) of M.S. and other Class Members has been accessed by unauthorized parties. Thus, the above-referenced data, while remaining extremely sensitive, is no longer confidential.

97.     But for FCPS' practice of unlawfully disclosing the Private Information of its students who have or have had a disability, including those who have received special education services, M.S.' and Class Members' confidential data would have remained secure from unauthorized access.

98.     As a direct result of FCPS' unlawful Disclosure, M.S. and the Class Members have been reasonably deterred from seeking further accommodations from FCPS and suffered other related harms.

99.    As a direct result of FCPS' unlawful Disclosure, M.S. and the Class Members have been denied the equal opportunity to seek scholastic services or other services from FCPS for which there is no other remedy among other related harms.

100.    As a direct result of FCPS' unlawful Disclosure, M.S. and the Class have been disparately treated in violation of the ADA and suffered damages including, but not limited to, compensatory damages, attorney fees and costs.

**COUNT TWO**
**Violation of Section 504 of the Rehabilitation Act**
**Disparate Treatment**
**(On Behalf of M.S. and the Class Members)**

101.    Plaintiff M.S. repeats and realleges all the foregoing paragraphs as though fully set forth herein.

102.    Title II of the ADA prohibits public entities from discriminating on the basis of disability. Section 504 does the same with respect to recipients of federal funds.

103.    The Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance or under any program or activity conducted by any Executive [A]gency… 29 U.S.C. § 794(a)."

23

104.   Pursuant to 29 U.S.C. § 79(b)(2)(B), local educational agencies like FCPS are considered programs under Section 504.

105.   FCPS' most recent Disclosure, when viewed in light of past and subsequent disclosures, amounts to deliberate indifference with respect to M.S. and other Class Members.

106.   As a result of FCPS' practice resulting in the Disclosure, the confidential and sensitive information (including health information) of M.S. and other Class Members has been accessed by unauthorized parties. Thus, the above-referenced data, while remaining extremely sensitive, is no longer confidential.

107.   But for FCPS' practice of unlawfully disclosing the Private Information of its students who have or have had a disability, including those who have received special education services, M.S.' and Class Members' confidential data would have remained secure from unauthorized access.

108.   As a direct result of FCPS' unlawful Disclosure, M.S. and the Class Members have been reasonably deterred from seeking further accommodations from FCPS and suffered other related harms.

109.   As a direct result of FCPS' unlawful Disclosure, M.S. and the Class Members have been denied the equal opportunity to seek scholastic services or other services from FCPS for which there is no other remedy among other related harms.

110.   As a direct result of FCPS' unlawful Disclosure, M.S. and the Class have been disparately treated in violation of the Section 504  and suffered damages including, but not limited to, compensatory damages, attorney fees and costs.

**COUNT THREE**
**Violation of Title II of the Americans with Disabilities Act of 1990:**
**Disparate Impact**
**(On Behalf of M.S. and the Class Members)**

111.   Plaintiff repeats and realleges all the foregoing paragraphs as though fully set forth herein.

112.   M.S. and Class Members have been disproportionately affected by FCPS' practices , rules, and/or methods of administrating responses to public records requests..

113.   The impact is on-going.

114.   The adverse effects of the policy  practice of disclosing the identities of students with disabilities  have disproportionately affected M.S. and Class Members.

115.   FCPS can demonstrate no legitimate justification for its policy and/or practice of repeatedly disclosing confidential information of its disabled students to parents and education advocates.

116.   But for FCPS' practice of unlawfully disclosing the Private Information of its students who have or have had a disability, including those who have received special education services, M.S.' and Class Members' confidential data would have remained secure from unauthorized access.

117.   As a direct result of FCPS' unlawful Disclosure, M.S. and the Class Members have been reasonably deterred from seeking further accommodations from FCPS and suffered other related harms.

118.   As a direct result of FCPS' unlawful Disclosure, M.S. and the Class Members have been denied the equal opportunity to seek scholastic services or other services from FCPS among other related harms.

119.   As a direct result of FCPS' unlawful Disclosure, M.S. and the Class have been disparately treated in violation of the ADA and suffered damages including, but not limited to, compensatory damages, attorney fees and costs.

**COUNT FOUR**
**<u>Violation of Section 504 of the Rehabilitation Act</u>**
**<u>Disparate Impact</u>**
**<u>(On Behalf of M.S. and the Class Members)</u>**

120.   Plaintiff repeats and realleges all the foregoing paragraphs as though fully set forth herein.

121.   M.S. and Class Members have been disproportionately affected by FCPS' polices, rules and/or methods of administrating responses to requests for student information by parents and education advocates.

122.   The impact is on-going.

123.   The adverse effects of the policy or practice of disclosing disabled student's identities have disproportionately affected M.S. and Class Members.

26

124.    FCPS can demonstrate no legitimate justification for its policy and practice of repeatedly disclosing confidential information to parents and education advocates.

125.    But for FCPS' practice of unlawfully disclosing the Private Information of its students who have or have had a disability, including those who have received special education services, M.S.' and Class Members' confidential data would have remained secure from unauthorized access.

126.    As a direct result of FCPS' unlawful Disclosure, M.S. and the Class Members have been reasonably deterred from seeking further accommodations from FCPS and suffered other related harms.

127.    As a direct result of FCPS' unlawful Disclosure, M.S. and the Class Members have been denied the equal opportunity to seek scholastic services or other services from FCPS among other related harms.

128.    As a direct result of FCPS' unlawful Disclosure, M.S. and the Class have been disparately treated in violation of Section 504 and suffered damages including, but not limited to, compensatory damages, attorney fees and costs.

129.    FCPS is a local educational agency.

130.    FCPS receives Federal financial assistance.

## COUNT FIVE
## Declaratory Relief
## (On Behalf of M.S. and the Class Members)

131.   Plaintiff repeats and realleges all the foregoing paragraphs as though fully set forth herein.

132.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and granting further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state laws and regulations described in this Complaint.

133.   An actual controversy has arisen in the wake of the Disclosure regarding FCPS' present and prospective common law and other duties to reasonably safeguard M.S.' and Class Members' Private Information, and whether FCPS is currently practicing adequate measures to protect their sensitive data from impermissible dissemination.

134.   Considering FCPS' history of making unlawful distributions of its students' Private Information, it is irrefutable that M.S.' and the Class' Private Information remain at imminent risk of future compromises.

135.   The Court should also issue prospective injunctive relief requiring FCPS to employ adequate record-keeping practices consistent with applicable state law, federal law, and regulations to protect the Class's Private Information.

136.    If an injunction is not issued, M.S. and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another disclosure. Considering FCPS' practice of shoddy record-keeping and frequent unauthorized distributions, there exists a real, immediate, and substantial risk that another such event will occur.

137.    The hardship to M.S. and Class Members if an injunction is not issued exceeds the hardship to FCPS if an injunction is issued. Among other things, if FCPS makes another impermissible disclosure, M.S.' and Class Members' Private Information will likely find itself in the hands of even more unauthorized parties, leading to additional injury. On the other hand, the cost to FCPS of complying with an injunction by employing reasonable record-keeping practices is relatively minimal, and FCPS has a pre-existing legal obligation to employ such practices.

138.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another FCPS disclosure, thus eliminating the additional injuries that would result to M.S. and Class Members, along with other FCPS students whose Private Information may be compromised.

139.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that FCPS owed and continues to owe a duty to implement and maintain reasonable record-keeping practices, including properly

training its personnel how to adequately respond to public records and/or student records requests.

**PRAYER FOR RELIEF**

WHEREFORE, M.S. and the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in her favor and against FCPS, as follows:

1.     For an Order certifying this action as a class action and appointing M.S. and his/her counsel to represent the Class;

2.     Declaratory relief, including but not limited to a declaration that FCPS' practice of impermissibly disclosing the Private Information of its students discriminates against individuals with disabilities in violation of the Americans with Disabilities Act;

3.     Declaratory relief, including but not limited to a declaration that FCPS' practice of impermissibly disclosing Private Information of its students discriminates against individuals with disabilities in violation of Section 504 of the Rehabilitation Act;

4.     Appropriate injunctive relief, including enjoining FCPS from engaging in the discriminatory conduct complained of herein pertaining to the disclosure of M.S.' and Class Members' Private Information; concluding that FCPS owed, and continues to owe, a legal duty to employ reasonable record-keeping practices to

secure the Private Information of its students with which it is entrusted; compelling FCPS to utilize appropriate practices to ensure it comes into compliance with all applicable laws and regulations regarding its student record-keeping practices; ordering FCPS to properly train all of its relevant personnel on the proper record-keeping practices;

5.    For an award of actual damages, compensatory damages, statutory damages, treble damages, and statutory penalties, in an amount to be determined, as allowable by law;

6.    For an award of attorneys' fees and costs, and any other expense, including expert witness fees, if applicable;

7.    Pre- and post-judgment interest on any amounts awarded; and

8.    Such other and further relief as this court may deem just and proper.

Dated: October 11, 2024.

Respectfully submitted,

 /s/_____
Matthew T. Sutter, Esq., VSB No. 66741
Sutter & Terpak, PLLC
7540 Little River Tnpk.
Suite A, First Floor
Annandale, VA 22003
Tel: (703) 256-1800
Fax: (703) 991-6116
Email: matt@sutterandterpak.com

Sam W. Burgan, Esq., VSB No. 42458
Burgan & Associates, P.C.
5673 Columbia Pike, Suite #201
Falls Church, VA 22041-2880
Tel: (703) 575-8810
Fax: (703) 575-8054
Email: sburgan@burganlaw.com

      and

Nicholas A. Migliaccio, Esq.*
Jason S. Rathod, Esq.*
Migliaccio & Rathod LLP
412 H Street N.E., Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
Fax: (202) 800-2730
Email: nmigliaccio@classlawdc.com and jrathod@classlawdc.com
* Pro hac vice admission

*Counsel for Plaintiff H.S. and the proposed Class*